UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| JESSE P. PERAZA,<br><br>  Plaintiffs,<br><br>  v.<br><br>CAROLYN W. COLVIN,<br><br>  Defendants. | Case No. 13-cv-03038-NJV<br><br>**ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 18, 21 |

## INTRODUCTION

Jesse Peraza seeks judicial review of an administrative law judge ("ALJ") decision denying his application for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act. Doc. No. 18. Peraza's request for review of the ALJ's decision was denied by the Appeals Council. *See* Administrative Record ("AR") 97-102. The decision thus is the "final decision" of the Commissioner of Social Security, which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge. Doc. Nos. 14 & 15. The court therefore may decide the parties' cross-motions for summary judgment.

For the reasons stated below, the court will grant in part and deny in part Peraza's motion for summary judgment, and will deny Defendant's motion for summary judgment.

## LEGAL STANDARDS

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Substantial

evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

# DISCUSSION

## I. SUMMARY OF RELEVANT EVIDENCE.

### A. Medical History.

Peraza has been diagnosed with Hepatitis C, diabetes, and cirrhosis of the liver. AR 182, 351-352. Peraza obtained medical treatment for these conditions during his ten-year incarceration, but after his February 2010 release, he contends that the only routine medical care available to him was the Emergency Room at the Santa Clara Valley Medical Center. AR 152-53, 175-81, 190-200. He was provided with medications to control his hypertension and diabetes. AR 180-81.

In February 2010, Peraza applied for Social Security benefits, claiming he was unable to work due to cirrhosis, hepatitis C, diabetes, hypertension, glaucoma and arthritis/degenerative joint disease. AR 89, 105-12. On June 10, 2010, Dr. Clark Gable examined Peraza in connection with his application for benefits. Dr. Gable is a state agency examining physician. He observed that while Peraza had a normal gait and could get on and off the examination table with relative ease, Peraza's knees locked at 60 degrees and he was able to perform only a mild or moderate squat. AR 182-83. Dr. Gable also noted that Peraza had visual difficulties secondary to glaucoma, but that he could follow and count fingers and had no difficulty moving about the room. Dr. Gable acknowledged Peraza's previous diagnoses of Hepatitis C without history of decompensation, diabetes "without apparent complications," hypertension "under very good control," and "cirrhosis according to Peraza," but his examination results were otherwise normal. AR 182-83. Dr. Gable opined that Peraza could sit up to six hours a day; stand and walk for a

2

1   total of six hours per day; lift, push or pull 25 pounds frequently and 50 pounds occasionally; had

2   no limitations in fine finger or hand movements. AR 183.

3         In July 2010, Dr. R. May (another state agency physician) reviewed Peraza's records in

4   connection with his application for SSI benefits and assessed Peraza's residual functional capacity

5   ("RFC"). Dr. May opined that Peraza could perform medium work, but was limited to occasional

6   climbing and had limits in near acuity. AR 184-87. In September 2010, the SSA reconsidered Dr.

7   May's RFC findings and reviewed Peraza's medical records through August 20, 2010. AR 215-

8   16. Dr. Fast affirmed the prior RFC. AR 216. Dr. Fast noted that the medical records he received

9   did not support the existence of cirrhosis and did not support the existence of rheumatoid arthritis.

10  *Id*.

11        The record contains a disability evaluation form dated September 7, 2010. AR 401-03.

12  Much of the form, including the signature and name of the person completing it, is illegible. The

13  unnamed physician observed varices and swelling caused by water retention in Peraza's lower

14  extremities; opined that Peraza suffered from cirrhosis, degenerative joint disease/osteoarthritis

15  (DJD and OA), and other impairments; opined that Peraza could stand/or walk for less than 20

16  minutes, sit for 60 minutes, and could lift, carry or pull less than 20 pounds; and opined that

17  Peraza was unemployable for 12 months. AR 403. It is not clear whether the person completing

18  the form was a treating physician or only examined Peraza on that date. No supporting

19  documentation is attached to the form.

20        Peraza developed a boil on his leg after being bitten by a spider. AR 224, 277. On

21  September 14, 2010, he was diagnosed with cellulitis and an abscess, and treated with antibiotics.

22  AR 277-78. His wound worsened, and he complained of shortness of breath, myalgia, weakness

23  and tiredness. AR 224-25, 238. Blood tests revealed hyperkalemia (high potassium) and diabetes

24  that was not well-controlled. AR 238-39. Peraza was admitted to the hospital and treated for

25  hyperkalemia, leg ulcer and diabetes were treated. AR 225, 240. He also was diagnosed with

26  chronic renal insufficiency, which did not respond to IV fluids, indicating it was caused by a

27  chronic state. AR 255. Upon discharge, he was instructed to seek follow up outpatient care for

28  his Hepatitis C and possible cirrhosis. AR 225.

In November 2010, Peraza presented to the Santa Clara Valley Medical Center with knee pain, but his physician recommended he avoid narcotics because his past history of drug use. AR 280. (Peraza used heroin but has been clean since 2000. AR 72, 182.) His physician suggested Peraza lose weight. AR 283.

On February 3, 2011, Peraza presented to the ER complaining of severe itching and knee pain; he received an expedited referral to a primary care physician ("PCP"). AR 280. Two weeks later, Peraza was examined by Dr. Dana Hoch, his new PCP. *Id*. Dr. Hoch noted that Peraza was experiencing blurred vision, constant hunger, increased fatigue, chest pain, slow healing of wounds, and burning of the extremities. AR 397). She observed hepatic (liver) and spleen enlargement, as well as tenderness and moderate pain with motion in both knees. AR 399. She ordered x-rays of Peraza's knees and an ultrasound of his abdomen. AR 400. The x-rays showed hypertrophic changes (enlargement) on the articular margins of the patella of Peraza's left knee; a narrowed medial compartment; and moderate hypertrophic changes on the medial margins of the joint. AR 414. The x-rays of his right knee showed a narrowed medial compartment and moderate hypertrophic changes on the articular margins. Peraza was diagnosed with osteoarthritis in both knees. AR 413-14. Liver function tests showed elevated levels of bilirubin and liver enzymes. AR 408.

On March 22, 2011, Dr. Hoch noted that Peraza's diabetes and hypertension were under fair control and that his Hepatitis C was "persistent." AR 395. Dr. Hoch administered steroid injections for Peraza's knee pain and prescribed a cane. AR 395-96. She diagnosed degenerative joint disease with chondrocalinosis of the knees. AR 394.

On April 1, 2011, Peraza saw Dr. Hoch because of persistent leg pain. AR 391. Dr. Hoch observed bruising, crepitus, and decreased mobility. AR 391. She also observed redness on the back of Peraza's left foot. AR 392. Dr. Hoch diagnosed early cellulitis, prescribed antibiotics, and instructed Peraza to go to the ER if his condition worsened. AR 392. Three days later, Peraza returned to Dr. Hoch's office because of worsening pain in his left foot. AR 388. She once more observed bruising and limping, as well as marked redness on Peraza's left foot. AR 388-89. On April 14, 2011, Peraza complained to Dr. Hoch that the pain in his left foot was 8/10. Dr. Hoch

4

1   observed bruising, crepitus, and decreased mobility.  AR 385-86.

2         On June 20, 2011, an ultrasound of Peraza's abdomen showed nodules of the hepatic
3   capsule, coarsened echotexture, and diffuse hepatocellular changes that were "most
4   consistent with cirrhosis." AR 411.

5         On August 18, 2011, Dr. Hoch opined that Peraza had a medical condition that "can" cause
6   leg swelling "at times" and that "[i]t would be best if every two hours or so he is able to elevate
7   his legs." AR 415.

8         Peraza has no history of hepatic decompensation. AR 182-83. His hypertension is well-
9   controlled with medication and his diabetes is "uncomplicated." AR 351 (November 2008), AR
10  182 (June 2010 examination notes), AR 215 (September 2010 case analysis). There was no
11  evidence of edema during any of Peraza's examinations in 2011. *See* AR 383, 389, 395, 399

12      **B. Testimony.**
13        During his hearing, the ALJ reprimanded Peraza's counsel for failing to cite supporting
14  evidence in his representative brief (AR 66-68), questioned Peraza regarding his criminal history
15  and incarceration (AR 72-77), and asked Peraza how he was supporting himself (AR 77-78). The
16  ALJ did not elicit any testimony regarding Peraza's daily activities, his pain, or his limitations.
17  The only testimony on these issues was volunteered by Peraza, who testified that he was
18  exhausted by mowing the little yard at his daughter's house; could walk half a block to the park
19  before needing to sit down; was always fatigued; his joints hurt a lot; and his fingers locked up if
20  he held on to anything too long. AR 79.

21      **C. Third Party Evidence.**
22        Peraza's daughter submitted a letter in which she describes her father's limitations. AR
23  167. She stated that Peraza experienced pain and depression as a result of his impairments, and
24  that his mobility was adversely affected. *Id*.

25  **II. THE FIVE STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY.**
26        A person filing a claim for social security disability benefits ("the claimant") must show
27  that he has the "inability to do any substantial gainful activity by reason of any medically
28  determinable physical or mental impairment" which has lasted or is expected to last for twelve or

more months. 20 C.F.R. §§ 416.920(a)(4)(ii), 416.909. The ALJ must consider all evidence in the claimant's case record to determine disability (*Id*. § 416.920(a)(3)), and must use a five-step sequential evaluation to determine whether the claimant is disabled (*Id*. § 416.920). "[T]he ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).

Here, the ALJ evaluated Peraza's application for benefits under the required five-step sequential evaluation (AR 20-27):

At Step One, the claimant bears the burden of showing he has not been engaged in "substantial gainful activity" since the alleged date the claimant became disabled. 20 C.F.R. § 416.920(b). If the claimant has worked and the work is found to be substantial gainful activity, the claimant will be found not disabled. *Id*. The ALJ found that Peraza had not engaged in substantial gainful activity since his onset date. AR 22. Peraza does not contest this finding.

At Step Two, the claimant bears the burden of showing that he has a medically severe impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii), (c). An impairment is "severe" unless it is a "slight abnormality" that has "no more than a minimal effect on a person's ability to work." *Delgado v. Comm'r of Soc. Sec. Admin.*, 500 Fed. Appx. 570 (9th Cir. 2012); *see also Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) ("[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims"). The ALJ found that Peraza had multiple severe impairments: cirrhosis secondary to hepatitis C infection, hypertension, and diabetes mellitus. AR 22. The ALJ found that Peraza's other impairments (glaucoma, arthritis, degenerative joint disease, and obesity) were non-severe. *Id*. Peraza argues that this finding was not supported by substantial evidence. The court addresses this issue below.

At Step Three, the ALJ compares the claimant's impairments to the impairments listed in appendix 1 to subpart P of part 404. *See* 20 C.F.R. § 416.920(a)(4)(iii), (d). The claimant bears the burden of showing his impairments meet or equal an impairment in the listing. *Id*. If the claimant is successful, a disability is presumed and benefits are awarded. *Id*. If the claimant is unsuccessful, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to Step Four. *Id*. § 416.920(a)(4)(iv), (e). Here, the ALJ found that Peraza did not have an

6

impairment or combination of impairments that met or medically equaled one of the listed impairments. AR 23. Peraza acknowledged at the hearing with the ALJ that he did not meet any of the listings. *See* AR 66 (ALJ: "I looked at your brief and I assume that you do not contend that [Peraza] meets the listing?" Representative: "I[t] doesn't look like it, your honor"). The ALJ accordingly found that Peraza was not entitled to a presumption of disability and proceeded to analyze Peraza's RFC. The ALJ found that Peraza had objectively identifiable, medically determinable impairments that reasonably could have expected to produce the pain and other subjective complaints Peraza alleged. However, based on the Peraza's self-described daily activities and on the fact that Peraza has seven felony convictions, the ALJ found that Peraza's allegations regarding the level of pain and complaints was not fully credible. AR 24. (Peraza does not challenge the ALJ's credibility finding.) After discounting Peraza's reports of pain and subjective complaints, the ALJ found that Peraza had the RFC to perform work at the "medium" exertional level. AR 23-25. Peraza argues that he has the RFC to perform, at best, work at the "sedentary" exertional level, and argues that the ALJ's evaluation of the medical opinion evidence was flawed, that the ALJ failed to develop the record, and that the ALJ failed to assess the limitations caused by his liver disease. The court addresses these arguments below.

At Step Four, the claimant bears the burden of showing he does not have sufficient RFC to perform past relevant work due to his impairments and/or limitations. *Id.* § 416.920(a)(4)(iv), (e). Peraza's past relevant work included a position as case manager, for which he drove around the Bay Area to interview clients who had been incarcerated, were on parole, and/or had drug problems, and would try to get them help. AR 70. The vocational expert testified that this was classified as "light" occupation. AR 72 (position includes some traveling, visiting some clients, and is classified as "light" in the Dictionary of Occupational Titles). The ALJ found that Peraza could perform his past relevant work as a case manager and accordingly found that Peraza had not been under a disability since the date his application was filed. AR 26. The ALJ did not proceed to Step Five in the sequential evaluation. Peraza argues that he cannot perform his past relevant work. The court addresses this issue below.

//

## III. ANALYSIS.

### A. Peraza's Knee Impairments.

#### 1. The ALJ's findings regarding Peraza's knee impairments.

The ALJ concluded based on "all symptoms to the extent" they were consistent with the objective medical evidence and other evidence, that Peraza's arthritis and degenerative joint disease were "nonsevere" and did not "significantly limit the claimant's ability to perform basic work activities." AR 22. In support of his conclusion, the ALJ noted that Peraza walked to the park, watched television, and attended to his own personal hygiene. AR 24. Because these "daily activities are inconsistent with the claimant's allegations of disabling symptoms and limitations," the ALJ found that Peraza's credibility was "weakened." *Id*. The ALJ also noted that Peraza had seven felony convictions. *Id*.[1]

#### 2. The ALJ's findings were not supported by substantial evidence.

The court finds that the ALJ's finding of non-severity is not supported by substantial evidence. On the contrary, the record contains substantial evidence supporting the existence of knee impairments that are more than *de minimis*. *See* AR 182-83 (during June 2010 examination, Peraza's knees locked at 60 degrees and he could only perform mild or moderate squat); AR 283 (knee pain in November 2010); AR 280 (knee pain in February 2011; x-rays showed enlargement on left patella and other changes to joints on both knees; diagnosed with osteoarthritis in both knees); AR 395 (treating physician administered steroid shots for knee pain and ordered cane for ambulation in March 2011). This constitutes substantial evidence that Peraza's diagnosed knee impairments were severe, and that the ALJ erred at Step Two of the sequential evaluation analysis. *See Gardner v. Astrue*, 257 Fed. Appx. 28, 29 (9th Cir. 2007) (finding ALJ erred in finding knee impairment was not severe and remanding for further analysis where claimant's "doctors repeatedly noted that he reported pain in the ankle and walked with a limp, and x-rays of the ankle showed at least minor 'arthritic changes.' This evidence is enough to clear the low bar at step

---

[1] The ALJ could take Peraza's criminal history into consideration when evaluating his credibility. *See Christensen v. Colvin*, 2014 U.S. Dist. LEXIS 15897, *19 (E.D. Cal. Feb. 7, 2014); *Torfason v. Astrue*, 2013 U.S. Dist. LEXIS 137907, *20 (N.D. Cal. Sept. 25, 2013).

two") (citing *Smolen*, 80 F.3d at 1290); *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) ("[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is clearly established by medical evidence" (citing S.S.R. 85-28)).

The ALJ did not address this evidence, much less explain why he gave the medical opinions of Peraza's treating physicians no weight. This constitutes error. *See Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (ALJ "must" explain why significant, probative evidence was rejected, and "must" explain why uncontroverted medical evidence was rejected); *see also* 20 C.F.R. § 416.920(a)(3) ("We will consider all evidence in your case record when we make a determination or decision whether you are disabled"). Instead, the ALJ silently rejected evidence that tended to support Peraza's claim that he suffered from degenerative joint disease, which caused him pain, required steroid injections for pain management and a cane for ambulation, and which significantly interfered with his ability to work. Despite being made aware of some of this evidence at the hearing, the ALJ failed to address it. *See, e.g.,* AR 66-67 (asking Peraza's representative at hearing "where in the record does [it] indicate that [a cane is] medically necessary" and moving on before representative finds supporting record in AR). The ALJ was required to acknowledge this significant, probative, and uncontroverted medical evidence, and explain why he rejected it. *Vincent*, 739 F.2d at 1394-95. The ALJ's failure is particularly significant where he ignored evidence generated by Peraza's treating physicians whose opinions are given more weight than that of other physicians. *See Smolen*, 80 F.3d at 1285 (ALJ can reject uncontroverted medical opinion of treating physician only by articulating "clear and convincing" reasons for doing so); *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 n.10 (9th Cir. 2007) ("[A]n ALJ cannot avoid these requirements simply by not mentioning the treating physician's opinion and making findings contrary to it").

### 3. The error was not harmless.

Defendant argues that any error was harmless because the ALJ took Peraza's knee pain into consideration when evaluating his RFC. Doc. No. 21 at 2-3. Peraza does not argue that his knee impairments meet or equal a listing. Therefore, even if the ALJ had found that Peraza's knee

impairments were severe, Peraza would not have been entitled to the presumption of disability to which claimants who meet or equal the listings at Step Three are entitled. Even if he had deemed Peraza's knee impairments severe, the ALJ would have proceeded to analyze Peraza's RFC as the ALJ did here. *See* AR 24-25. Had the ALJ addressed Peraza's knee impairments in his RFC analysis and explained why he discounted the objective medical evidence relating to those impairments, Defendant might have prevailed on this argument. However, the ALJ did not.

The court cannot find that the ALJ's error was harmless. Properly analyzing the medical records that supported Peraza's testimony of knee pain and structural changes, might have caused the medical consultants and/or the ALJ to find Peraza's statements regarding his limitations more credible. Substantively, it also might have caused the medical consultants and/or the ALJ to revise the exertional level of which they found Peraza capable. Peraza argued that, at most, he could perform work at the sedentary level of exertion. AR 68. Despite the medical evidence and Peraza's testimony, the ALJ found that Peraza could perform his past work as a case manager, which is classified as a "light" occupation. AR 26, 70. The full range of light occupations requires "a good deal of walking or standing." 1983 SSR 30, *15 (1983) (identifying this as the "primary difference between sedentary and most light jobs"); *see also* AR 71-72 (vocational expert confirmed that the manner in which Peraza performed his work was "light"). The ALJ did not ask the vocational expert who appeared at the hearing whether a claimant with knee pain and fatigue, the inability to walk more than half a block, and needing a cane for ambulation could perform "light" work. AR 70. If properly considered, the medical evidence could cause the ALJ to ask the vocational expert whether someone with these limitations could perform "light" work such as Peraza's past relevant occupation as a case manager. (The court notes that the vocational expert confirmed that Peraza's prior occupation could *not* be performed at the sedentary level. *See* AR 68, 70-72.) Because the medical evidence could cause the ALJ to find that Peraza was not capable of light work, and thus was not capable of performing his past relevant work as a case manager, the court finds that the ALJ's decision at Step Two was not harmless error, and that it provides a basis for reversing the Commissioner's decision.

### B. The ALJ's Evaluation Of The Medical Opinion Evidence.

#### 1. Dr. Hoch's August 2011 opinion.

Dr. Hoch submitted a letter opining that Peraza "has a medical condition which can cause leg swelling at time. It would be best if every two hours or so he is able to elevate his legs." AR 415. Dr. Hoch does not identify the condition, does not describe the frequency or gravity of the swelling, does not describe the impact of the swelling on Peraza's functioning, does not explain whether the swelling can be treated (for example, with compression hose or medication), and does not explain the impact of not elevating his legs. *Id.*

While a treating physician's opinion is normally accorded great weight, the ALJ here gave Dr. Hoch's opinion little weight because it was not supported by the majority of the medical evidence. AR 24-25. An ALJ need not accept a treater's opinion if it is "brief, conclusory, and inadequately supported by clinical findings." *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). The ALJ's statements during the hearing make clear that the ALJ rejected Dr. Hoch's opinion precisely on that basis:

> And then, last and most importantly, Exhibit 14-F. Mr. Peraza has a medical condition. It doesn't say what kind. Which can cause leg swelling. Okay. Unspecified impairment, causation leg swelling. It would be best if every two hours he is able to elevate his legs. It doesn't tell me how long he needs to elevate his legs. If it [is] less than five minutes or ten minutes[;] it's probably not work prohibitive. And again, he doesn't explain to me why support hose is insufficient. And, last, but not least, he didn't tell me when this medical condition began, when he first saw the claimant, when he started to have to raise his legs every two hours.

AR 67-68. Peraza's representative implicitly acknowledged that the terse opinion was unhelpful, but explained that he could not get a further statement from Dr. Hoch. AR 68 ("Valley Med will not help anybody. I fought for two months just to get that. . . . And, I understand the problem"). The ALJ's generic statement in his decision that Dr. Hoch's opinion was not supported by the majority of the medical evidence (AR 25) is not a "specific and legitimate" reason for giving that opinion little weight. *See Reddick*, 157 F.3d at 725 ("Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record…. This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating

11

his interpretation thereof, and making findings…. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct") (internal citations omitted)). However, any error is harmless given the specific and legitimate reasons articulated by the ALJ during the hearing, the brief and conclusory nature of Dr. Hoch's opinion, the ambiguous nature of Dr. Hoch's opinion, the ALJ's recitation of evidence earlier in his decision that contradicts Dr. Hoch's opinion, and the lack of substantial evidence in the record that would support the limitations suggested by Dr. Hoch. (Indeed, the court notes that Dr. Hoch repeatedly documented the absence of any edema during examinations in 2011. *See* AR 383, 389, 395, 399.) Accordingly, the court finds that any error in giving Dr. Hoch's August 2011 opinion "little weight" was harmless, and is not a basis for reversing the Commissioner's decision.

### 2. The September 2010 disability evaluation.

Defendant admits that the ALJ did not address the September 2010 disability evaluation form (AR 401-03), but argues that any error is harmless. Doc. No. 21 at 6. Although much of the form is illegible, the portions that are legible constitute significant probative evidence concerning Peraza's claimed limitations. *See* AR 403 (limiting Peraza to walking and standing 20 minutes; sitting 60 minutes; lifting, pulling, reaching and carrying 20 pounds; recommending Peraza is unemployable for 12 months). The unidentified doctor's recommendations directly conflict with the findings of the state agency physicians, who found Peraza was capable of sitting and standing for much greater durations, and of lifting and carrying greater weight. The ALJ was required to address this evidence, and erred in failing to do so. *See* 20 C.F.R. § 416.920(a)(3) ("all evidence" in record must be considered), § 416.927(b) ("[W]e will always consider the medical opinions in your case together with the rest of the relevant evidence we receive" & (c) ("Regardless of its source, we will evaluate every medical opinion we receive"); *see also Vincent*, 739 F.2d at 1394-95, *Lingfelter*, 504 F.3d at 1038 n.10. Whereas the record establishes that the ALJ considered and rejected Dr. Hoch's opinion for specific and legitimate reasons, the record does not establish whether the ALJ even reviewed the disability form, much less evaluated the opinions expressed therein. The court cannot find this total failure to address a doctor's opinion (whether the opinion

12

was provided by a treater or an examining physician) is harmless error, and finds that the Commissioner's decision must be reversed on this basis.

### 3. Dr. Gable's opinion.

Peraza argues that the ALJ erred in giving significant weight to the opinion of Dr. Gable, one of the state agency physicians. *See* Doc. No. 18 at 11 (opinions not "substantial evidence" because agency physician only reviewed small portion of treatment records). Peraza's argument fails. *Tonapetyan v. Halter*, 242 F.3d 1144, 1151 (9th Cir. 2001), the case on which Peraza relies, involved a testifying expert who not only did not examine the claimant but who also repeatedly expressed a reluctance to diagnose the claimant because the record he had reviewed was ambiguous. Here, Dr. Gable performed his own physical examination of the claimant and offered an opinion based on his findings. *See* AR 182-83. Dr. Gable made findings about the conditions Peraza argues Dr. Gable did not consider. *Compare* Doc. No. 18 at 11 (state agency physician did not consider limitations caused by cirrhosis nor review x-rays) *with* AR 183 (noting cirrhosis with no history of decompensation and examining knees). While additional records may have been helpful, Peraza does not explain how the records Dr. Gable did not review contradicted his opinion. Peraza also cites no authority for the proposition that an examining physician must review all of a claimant's treatment records in order to offer an opinion based on his or her own examination. The court finds that this is not a basis for reversing the Commissioner's decision.

### C. Failure to develop the record.

The ALJ had an independent "'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" *Smolen*, 80 F.3d at 1288 (quoting *Brown*, 713 F.2d at 443). Disability hearings are not adversarial in nature. *See Sims v. Apfel*, 530 U.S. 103, 111 (2000). In an administrative hearing, the ALJ must "look[] fully into the issues." 20 C.F.R. § 416.1444; *see also* 20 C.F.R. § 416.920(a)(3) ("We will consider all evidence in your case record when we make a determination or decision whether you are disabled"). As part of this duty, the ALJ had an obligation to take reasonable steps to ensure that issues and questions raised by medical evidence in the AR were addressed so that the disability determination was fairly made on a sufficient record of information, both favorable and unfavorable to the claimant. *See Tidwell v.*

13

*Apfel*, 161 F.3d 599, 602 (9th Cir. 1999).  The ALJ could not substitute his own interpretation of medical evidence for the opinion of medical professionals.  *See Tackett v. Apfel*, 180 F.3d 1094, 1102-03 (9th Cir. 1999); *see also Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings").

Peraza correctly argues that the non-examining physicians who evaluated his RFC were not given the majority of his treatment records, including the x-rays that provided objective evidence of his knee impairment, the disability evaluation form completed by the unnamed physician in September 2010, or any of Dr. Hoch's treatment records.  One of the agency physicians noted in September 2010 that while Peraza appeared to have knee pain and was unable to make a complete squat, he did not fully credit Peraza's reported symptoms because "there is no deformity, heat, swelling or redness."  AR 215.  The February 2011 x-rays establish that there is deformity in the knees (AR 413-14), and thus might have affected the physician's case analysis both substantively and in terms of the assessment of Peraza's credibility.  Dr. May, the agency physician whose opinion the ALJ gave "significant weight" to, did not even consider Peraza's knee impairments when assessing his RFC in July 2010.  *See* AR 184 (primary diagnosis: hepatitis C, diabetes mellitus; secondary diagnosis, glaucoma).  Similarly, Dr. Hoch's treatment records document treatment for Peraza's knee pain in 2011.  AR 382-400. In 2011, Peraza also underwent an ultrasound, which provided objective medical evidence that Peraza suffered from moderately advanced cirrhosis.  AR 411-12.[2]  No medical consultant or examiner reviewed Peraza's knee x-rays, his ultrasound, or Dr. Hoch's treatment notes.

To the extent the ALJ even considered the 2011 records (and it is not clear from the record that he did[3]), and evaluated them, he improperly substituted his judgment for that of a medical

---

[2] While the existence of cirrhosis does not establish that Peraza suffered any particular impairment as a result of the cirrhosis, the results of the ultrasound might have affected the assessments by the state agency physicians, each of whom noted the absence of evidence concerning Peraza's cirrhosis and discounted Peraza's credibility on that basis.  *See* AR 182-83, 186, 215.  The ALJ in turn relied on the opinions of these state agency physicians when evaluating Peraza's RFC.  The ultrasound results also should have been addressed by the ALJ during his discussion of Perazas cirrhosis.  *See* AR 24.

[3] To the extent the ALJ did review Dr. Hoch's treatment notes, he fails to address them in his decision.  The ALJ was required to address all probative medical evidence.  *See* p. 9 & p. 12, *supra*.  The ALJ erred in failing to address Dr. Hoch's treatment notes.

14

expert. *See Smolen*, 80 F.3d at 1288 (ALJ must conduct appropriate inquiry to evaluate medical evidence).

## CONCLUSION

For the reasons stated above, the court grants in part and denies in part Peraza's motion for summary judgment, and denies Defendant's motion for summary judgment. The court, however, denies Peraza's motion to reverse with an order for immediate payment of benefits. Where the record has not been fully developed, where further administrative proceedings would be useful, and where outstanding issues exist that must be resolved before a determination of disability can be made, remand is the appropriate remedy. *See Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). Here, the record has not been fully developed, further administrative proceedings would serve a useful purpose, and there are outstanding issues that must be resolved before a determination of disability can be made. Accordingly, the court reverses the Commissioner's decision and remands the case for further proceedings consistent with this order.

The Clerk of the Court is directed to close the case.

**IT IS SO ORDERED**.

Dated: March 26, 2014

_____
NANDOR J. VADAS
United States Magistrate Judge